**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL FRISHKORN,** | ) | |
| **Plaintiff** | ) | **C.A. No. 24-264 Erie** |
| | ) | |
| **v.** | ) | **District Judge Susan Paradise Baxter** |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS. INC.,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiff Michael Frishkorn filed this action against Defendant Experian Information Solutions, Inc. ("EIS"), alleging that EIS reported allegedly inaccurate information about him in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* In particular, Plaintiff alleges that EIS mixed his credit file with the file of an unrelated consumer and published inaccurate information about him to third parties.

Presently pending before the Court is EIS's motion to compel arbitration [ECF No. 20] pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). Attached as an exhibit to EIS's brief in support of its motion [ECF No. 21], is the declaration of Dan Smith ("Smith"), Director of Product Operations for ConsumerInfo.com, Inc., doing business as Experian Consumer Services ("ECS"), an affiliate of EIS. [ECF No. 21-1]. Plaintiff has filed a brief in opposition to EIS's motion challenging both the admissibility and sufficiency of Smith's declaration and the enforceability of the arbitration agreement relied upon by EIS. [ECF No. 26]. EIS subsequently filed a reply to Plaintiff's opposition. [ECF No. 29]. This matter is now ripe for consideration.

## II.    DISCUSSION

### A.    Standards of Review

Under the Federal Arbitration Act ("FAA"), "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "establishes a strong federal policy in favor of compelling arbitration over litigation." Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000). The Act "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010). Thus, the Court "must resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir. 2014) quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Because "arbitration is a matter of contract ... [and is] predicated upon the parties' consent," a court ruling on a motion to compel under § 4 must first determine if the parties intended to arbitrate the dispute. Guidotti, 716 F.3d at 771 (citations omitted). Specifically, a court must determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). "If the response is in the affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Santana v. A.L. Recovery, LLC., 2018 WL 3912830, at *6 (W.D. Pa. Aug. 16,

2018), quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 527 (3d Cir. 2009).

Here, as to the second prong, Plaintiff has not disputed EIS's contention that the subject matter of his claims falls within the scope of the purported arbitration agreement. Rather, Plaintiff argues that the arbitration agreement is invalid and unenforceable, and has offered his own declaration wherein he declares, under penalty of perjury, that he "was not aware … that [he] signed up for credit monitoring and agreed to arbitrate any claims against [EIS]" and "do[es] not recall entering into any type of arbitration agreement with [EIS]." (ECF No. 26-2, at ¶¶ 4. 5). Thus, the sole issue to be determined by the Court is whether a valid and enforceable arbitration agreement exists.

> **B.**    **Analysis**

EIS argues that there is a valid agreement to arbitrate between itself and Plaintiff and, to that end, EIS proffers the declaration of Smith. [ECF No. 21-1). Smith declares that EIS is an affiliate of ECS, and both are subsidiaries of Experian Holdings, Inc. (Id. at ¶ 2). In his role as Director of Product Operations, Smith is familiar with CreditWorks, Experian's credit monitoring service. (Id. at ¶ 1). Smith indicates that Plaintiff enrolled in CreditWorks on July 24, 2016, which required Plaintiff to complete two webforms. (Id. at ¶ 3). The first form required Plaintiff to enter his personal information - i.e., his name, address, phone number, and e-mail address - while the second form required Plaintiff to enter his social security number, date of birth, and username and password. (Id.). Smith declares that "Immediately below the boxes to enter and confirm [Plaintiff's] password, was the following disclosure: 'By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy.'" (Id.). The "Terms of Use Agreement" was

hyperlinked, in bold blue text, to the full text of the agreement that was available for Plaintiff's review before clicking the "Submit Secure Order" button. (Id. at ¶ 4). Plaintiff would not have been able to successfully enroll in CreditWorks unless he clicked that button. (Id. at ¶ 5). Attached to Smith's declaration are representations of the webforms, the Terms of Use, and the Terms of Use Agreement as they would have appeared when Plaintiff enrolled.

The "Terms of Use" in effect at the time of Plaintiff's enrollment in CreditWorks contained an "Arbitration Agreement" that requires arbitration of claims against ECS and its affiliates and incorporates AAA rules. (Id. at ¶ 6). EIS rests its argument for arbitration on Smith's account of what Plaintiff would have seen at the time he enrolled in CreditWorks.

In opposition to EIS's motion, Plaintiff first argues that Smith's declaration cannot be relied upon because he lacks personal knowledge of the facts to which he attests and cites no internal records establishing that an IP address associated with a device that Plaintiff allegedly used on July 24, 2016, to enroll in CreditWorks. (ECF No. 26, at pp. 9-10). However, for the reasons cited by numerous courts in substantially similar cases involving challenges to arbitration agreements and, in particular, challenges to the reliability of declarations identical to Smith's, this Court declines to reject Smith's declaration and is satisfied that Smith has sufficient firsthand knowledge to support all facts in his declaration, including Plaintiff's creation of a CreditWorks account. See, e.g., Simensky v. Experian Information Solutions, Inc., 2025 WL 3754509, at *2 (3d Cir. Dec. 29, 2025) (rejecting the plaintiff's challenge to the identical declaration in support of Experian's motion to compel arbitration); Buchanan v. Experian Information Solutions, Inc., 2024 WL 4817129, at 2 (W.D. Pa. Nov. 18, 2024) (same); Austin v. Experian Information Solutions, Inc., 148 F.4th 194, 204-205 (4th Cir. 2025) (reversing district court's exclusion of substantially similar declaration, finding that the declarant had "properly

demonstrated his own knowledge"); Lamonaco v. Experian Information Solutions, Inc., 148 F.4th 194, 204 (11th Cir. 2025) (rejecting the plaintiff's challenge to substantially similar declaration); Newton v. Experian Information Solutions, Inc., 2025 WL 2102084, at *3 (11th Cir. Jul. 28, 2025).[1]

Plaintiff's second argument that the "clickwrap" agreement[2] relied upon by EIS is "insufficient to establish mutual assent from users under the laws of Pennsylvania" (ECF No. 26, at p. 16), fares no better.

"Although the enforceability of web-based agreements will often depend on a 'fact-intensive inquiry,' the Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" HealthplanCRM, LLC v. AvMed, Inc., 458 F.Supp.3d 308, 331 (W.D. Pa. 2020), quoting Meyer v. Uber Techs., Inc., 868 F.3d 66, 76 (2d Cir. 2017) (citation omitted). "To be reasonably conspicuous, notice [of an agreement] must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." Checchia v. Solo Funds, 2023 WL 3868369, at *9 (E.D. Pa. June 7, 2023) (citation and internal quotation omitted); see also Liptak v. Accelerated Inventory Mgmt, LLC, 2021 WL 650514, at *1 (W.D. Pa. Feb. 19, 2021) (finding that a borrower agreement not visible on the webpage but available through an un-underlined green hyperlink was reasonably conspicuous to enforce arbitration agreement contained in the hyperlinked documents). In general, "clickwrap

---

[1] Ironically, in support of its argument that Smith's declaration should be rejected, Plaintiff cites the district court decisions in Austin, Newton, and Lamonaco (ECF No. 26, at pp. 12-14), all of which have since been reversed by the circuit courts, rendering those decisions unavailing for Plaintiff.

[2] "A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." Feldman v. Google, Inc., 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007).

agreements are routinely enforced by the courts." HealthplanCRM, 458 F.Supp.3d at 334.

"Importantly, in assessing whether a party manifested an intent to enter a [web-based] contract, the Court looks not to inward, subjective intent but, rather, to the 'intent a reasonable person would apprehend in considering the parties' behavior.'" Id., quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009) (citation omitted). Thus, "an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." Liptak v. Accelerated Inventory Mgmt, LLC, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021), citing Nicosia v. Amazon.com, Inc., 834 F.3d 220, 222 (2d Cir. 2016). "Whether the user actually reads the terms to which she assents is immaterial." Id., quoting Zabokritsky v. Jetsmarter, Inc., 2019 WL 2563738, *3 (E.D. Pa. June 20, 2019); see also Feldman, 513 F.Supp.2d at 236 ("Absent a showing of fraud, failure to read an enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with its terms").

Here, as noted earlier, the second webform completed by Plaintiff in conjunction with his CreditWorks enrollment explicitly stated, "By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." This statement was sufficient to put Plaintiff on notice that the act of clicking the "Submit Secure Order" button meant that he was acknowledging he accepted and agreed to the Terms of Use Agreement. Moreover, the term "Terms of Use Agreement" was set apart from the surrounding text by being placed in bold blue type, signifying a hyperlink to the full agreement containing the arbitration provision at issue.

Thus, the Court finds that the hyperlink to the Terms of Use Agreement was reasonably conspicuous such that a reasonably prudent Internet user would have seen it and clicked on it if

6

he chose to avail himself of the opportunity to read the Agreement he acknowledged he had accepted and agreed to read by clicking the "Submit Secure Order" button. Compare Hine v. LendingClub Corp., 2023 WL 8223234, at *7 (W.D. Pa. Nov. 22, 2023) ("While the Loan Agreement and Borrower Membership Agreement hyperlinks are not underlined or in bold font, it would be readily apparent to a reasonably prudent Internet user that distinct green font used for document descriptions like "Loan Agreement" and "Borrower Membership Agreement" while all other surrounding text is in black font would contain hyperlinks). Furthermore, because Plaintiff did not have to actually read the terms and conditions or click on the hyperlink containing the Terms and Use Agreement to be bound by the terms therein, mutual assent exists here.

For the foregoing reasons, the Court finds that Plaintiff is bound by the arbitration provisions contained within the Terms and Use Agreement that was conspicuously hyperlinked on EIS's website. Additionally, the Court finds that the arbitration provision was prominently displayed in all capitalized terms "clear and unambiguous language that the [P]laintiff[s] … waive[ed] [their] right to sue or got to court to secure relief." Atalese, 99 A.3d at 315-16. (See ECF No. 21-1, at p. 13). Consequently, the Court will grant EIS's motion to compel arbitration.

An appropriate Order follows.